# WAYNE RIOUX *v.* TIMOTHY F. BARRY ET AL.
## (SC 17705)

Borden, Norcott, Katz, Vertefeuille and Zarella, Js.

Argued March 7—officially released July 31, 2007

*Alinor C. Sterling,* with whom was *Ira Grudberg,* for the appellant (plaintiff).

*Joseph A. Jordano,* assistant attorney general, with whom, on the brief, was *Richard Blumenthal,* attorney general, for the appellees (named defendant et al.).

*Sheila A. Huddleston,* with whom, on the brief, were *Shari M. Goodstein* and *Eric Lubochinski,* for the appellee (defendant Mark Wallack).

*Opinion*

BORDEN, J. The plaintiff, Wayne Rioux, appeals[1] from the judgment of the trial court granting the motion

---

[1] The plaintiff appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

to dismiss filed by the defendants[2] based on the court's conclusion that the action was barred by the doctrine of absolute immunity. The plaintiff claims that the trial court improperly determined that the defendants were entitled to absolute immunity against the plaintiff's claims for vexatious litigation[3] and intentional interference with contractual or beneficial relations. We reverse the trial court's judgment as to the vexatious litigation claim, and affirm the court's judgment as to the claim for intentional interference with contractual or beneficial relations.

The plaintiff brought this action against the defendants, alleging vexatious litigation and intentional inter-

---

[2] The defendants in this case, Timothy F. Barry, Karoline Keith, John Sipper, John Bement, Mark Laurentano, Kathy Laurentano, Edward Capowich, Marisol LaBoy, Edward Lynch, Robert Duffy, Thomas Snyder, Timothy Loomis and Mark Wallack, are all members of the Connecticut state police. At the relevant times, Keith was a detective in the state police assigned to Troop B, Sipper, Bement and Capowich were troopers and union representatives in the state police assigned to Troop B under the plaintiff's command, Loomis, Mark Laurentano and Kathy Laurentano were state police troopers assigned to Troop B under the plaintiff's command, LaBoy was a clerk employed by the state police at Troop B, Duffy and Snyder carried out the internal affairs investigation of the plaintiff, Barry initiated and reviewed internal affairs investigations of the state police, and also determined any disciplinary measures imposed on the plaintiff, and Wallack was a trooper in the state police and union president. Barry, Keith, Sipper, Bement, Mark Laurentano, Mary Laurentano, Capowich, LaBoy, Lynch, Duffy, Snyder and Loomis jointly filed a brief in this case. Wallack joined this matter as a defendant, but filed a brief separately. The substantive claim on this appeal centers on Keith's sexual harassment claim. The rest of the defendants, including Wallack, have been accused of conspiracy to commit the torts of vexatious litigation and intentional interference with contractual benefits. Accordingly, we consider the defendants linked in this matter, despite the fact that Wallack filed a separate brief.

[3] The parties incorrectly refer to the vexatious litigation claim in the present case as a malicious prosecution claim. Malicious prosecution lies, however, only in an action arising in a criminal context. Vexatious litigation is reserved for an action, such as the present one, arising in a civil context. Although the elements of the two torts are identical; compare *Vandersluis v. Weil*, 176 Conn. 353, 356, 407 A.2d 982 (1978), and *McHale* v. *W.B.S. Corp.*, 187 Conn. 444, 447, 446 A.2d 815 (1982); for the sake of accuracy, we refer to the plaintiff's claim as a vexatious litigation claim.

ference with contractual or beneficial relations. The trial court granted the defendants' motion to dismiss the action, and rendered judgment accordingly. This appeal followed.

"Because in this appeal we review the trial court's ruling on a motion to dismiss, we take the facts to be those alleged in the complaint, construing them in a manner most favorable to the pleader." *Beecher* v. *Mohegan Tribe of Indians*, 282 Conn. 130, 132, 918 A.2d 880 (2007). The following facts were alleged in the plaintiff's complaint. In August, 2001, Lieutenant Colonel Edward Lynch assigned the plaintiff, who had served for approximately twenty-three years as a member of the Connecticut state police and held the rank of lieutenant, to be the commanding officer of the Troop B barracks in North Canaan. In assigning the plaintiff to his new position, Lynch informed the plaintiff that Troop B was "low in compliance" and instructed him to " 'clean up' " Troop B and its personnel. In implementing Lynch's order, the plaintiff instituted many reforms pertaining to the management and personnel evaluation of Troop B, including stand-up roll calls, and regulations regarding uniforms, personal appearance and accountability for abuse of sick leave.

The plaintiff further alleged that the defendants resented the tighter discipline imposed upon them by the reforms that he had implemented, and that, as early as June, 2002, the defendants conspired to " 'get rid' " of him. The plaintiff also alleged that in June, 2002, Troopers John Sipper, John Bement and Edward Capowich, all of whom were union representatives, informed Trooper Mark Wallack, the union president, of the troopers' intention to " 'get rid' of" the plaintiff, and that Wallack sent a written questionnaire to the members of Troop B, asking them to rate the plaintiff's performance and to voice any additional comments or concerns. Troopers were allowed to answer anony-

mously. The plaintiff alleged that this survey was part of the plan to " 'get rid' " of him.

In her response to the survey, Detective Karoline Keith claimed that the plaintiff had engaged in conduct that constituted sexual harassment. Sipper and other union representatives subsequently alerted persons in the state police high command of the claims that Keith had made in her response to the survey, which resulted in the initiation of an investigation of the plaintiff by the internal affairs division. The plaintiff alleged that Keith's statements, which she persisted in making throughout the internal affairs investigation and elaborated upon, were false and had been made with the intent of initiating an internal affairs investigation of him and of causing his suspension and termination from the state police. The plaintiff further alleged that Marisol LaBoy and Troopers Kathy Laurentano and Mark Laurentano corroborated these false statements with the intent of ending the plaintiff's career as a police officer.

The internal affairs investigation into Keith's allegations eventually resulted in a finding that the plaintiff had violated the provisions of the department of public safety's administration and operation manual that prohibit the use of improper language and sexual harassment. As a result, the plaintiff was suspended for thirty days without pay. The plaintiff appealed his suspension to the appeal board, which found that the allegations against the plaintiff were not supported by credible evidence. Specifically, the appeal board found that the testimony of all of the state's witnesses, particularly that of Keith, was so lacking in credibility that it appeared to have been fabricated prior to her appearance before the board. Accordingly, the appeal board sustained the plaintiff's appeal, dismissed the charges against him, and rescinded his suspension.

The plaintiff claims on appeal that the trial court improperly concluded that absolute immunity barred his claims of vexatious litigation and intentional interference with contractual or beneficial relations. Because the resolution of this claim requires us to consider the trial court's ultimate legal conclusion and its resulting judgment of dismissal, our review is de novo. *Cox* v. *Aiken*, 278 Conn. 204, 210–11, 897 A.2d 71 (2006). We conclude, that, in the context of a quasi-judicial proceeding, absolute immunity does not attach to statements that provide the ground for the tort of vexatious litigation, but does bar a suit alleging that those same statements constituted an intentional interference with contractual or beneficial relations. Because we base those conclusions on the fundamental purpose underlying the doctrine of absolute immunity, we preliminarily review that doctrine and its underlying purpose.

The doctrine of absolute immunity as applied to statements made in the context of judicial and quasi-judicial proceedings is rooted in the public policy of encouraging witnesses, both complaining and testimonial, to come forward and testify in either criminal or civil actions. The purpose of affording absolute immunity to those who provide information in connection with judicial and quasi-judicial proceedings is "that in certain situations the public interest in having people speak freely outweighs the risk that individuals will occasionally abuse the privilege by making false and malicious statements." (Internal quotation marks omitted.) *Chadha* v. *Charlotte Hungerford Hospital*, 272 Conn. 776, 786, 865 A.2d 1163 (2005); *Petyan* v. *Ellis*, 200 Conn. 243, 246, 510 A.2d 1337 (1986). "[T]he possibility of incurring the costs and inconvenience associated with defending a [retaliatory] suit might well deter a citizen with a legitimate grievance from filing a complaint." (Internal quotation marks omitted.) *Craig* v. *Stafford Construction, Inc.*, 271 Conn. 78, 95, 856 A.2d

372 (2004). "Put simply, absolute immunity furthers the public policy of encouraging participation and candor in judicial and quasi-judicial proceedings. This objective would be thwarted if those persons whom the common-law doctrine was intended to protect nevertheless faced the threat of suit. In this regard, the purpose of the absolute immunity afforded participants in judicial and quasi-judicial proceedings is the same as the purpose of the sovereign immunity enjoyed by the state." *Chadha* v. *Charlotte Hungerford Hospital*, supra, 787. As a result, courts have recognized absolute immunity as a defense in certain retaliatory civil actions in order to remove this disincentive and thus encourage citizens to come forward with complaints or to testify. The question before us is whether claims based on vexatious litigation and intentional interference with contractual or beneficial relations fall under this rule.

We consistently have held that absolute immunity bars defamation claims that arise from statements made in the course of judicial or quasi-judicial hearings. In *Craig* v. *Stafford Construction, Inc.*, supra, 271 Conn. 80, we concluded that an investigation by the city of Hartford police department's internal affairs division constituted a quasi-judicial proceeding, thereby affording absolute immunity to the citizen complainant whose claim had given rise to the investigation.[4] The plaintiff in *Craig*, a police officer with the department, brought a defamation action against the defendants claiming that they had defamed him when they filed a citizen complaint with the police department alleging that he had directed racial slurs toward them at a construction site. Id., 81. We concluded that the internal affairs investigation constituted a quasi-judicial pro-

---

[4] We note that the issue before us in *Craig* did not hinge on whether absolute immunity should attach to a defamation claim. The issue was whether the internal affairs division proceeding constituted a quasi-judicial proceeding. *Craig* v. *Stafford Construction, Inc.*, 271 Conn. 80.

ceeding, and therefore that the allegedly defamatory statements were entitled to absolute immunity, even if those statements had been made falsely and maliciously. Id., 84, 88.

In so holding, we applied the general principles underlying the doctrine of absolute immunity to the particular context of an internal affairs investigation. Although we recognized the debilitating effect that a false allegation of racial discrimination can have on a police officer; id., 95–96; the policy concerns underlying absolute immunity—encouraging complaining and testimonial witnesses to come forward—outweighed the interest of the private individual in being free from defamation. We stated that "the policy of encouraging citizen complaints against those people who wield extraordinary power within the community outweighed the need to protect the reputation of the police officer against whom the complaint is made." Id., 96. Indeed, we consistently have applied the doctrine of absolute immunity to defamation actions arising from judicial or quasi-judicial proceedings. See, e.g., *Chadha* v. *Charlotte Hungerford Hospital*, supra, 272 Conn. 786; *Kelley* v. *Bonney*, 221 Conn. 549, 565–66, 606 A.2d 693 (1992);[5] *Petyan* v. *Ellis*, supra, 200 Conn. 247; *Hassett* v. *Carroll*, 85 Conn. 23, 35, 81 A. 1013 (1911); *Blakeslee & Sons* v. *Carroll*, 64 Conn. 223, 232, 29 A. 473 (1894).

In *McHale* v. *W.B.S. Corp.*, 187 Conn. 444, 447, 446 A.2d 815 (1982), however, we concluded that the complaining witnesses were protected by immunity in a malicious prosecution action because they brought the claims in good faith. After dismissal of the criminal charges against him, the plaintiff in *McHale* instituted an action against the complaining witness for malicious

---

[5] In *Kelley* v. *Bonney*, supra, 221 Conn. 565 n.12, we declined to address the issue raised in the present case because the defendant in *Kelley* had not pleaded malicious prosecution.

prosecution. Id. In concluding that the defendants were entitled to immunity, we stated that "[i]n our judgment, a proper concern for private assistance to public law enforcement officers requires immunity from liability for malicious prosecution for the citizen who, in good faith, volunteers false incriminating information." Id., 450. We recognized that the public interest of encouraging complaining witnesses to come forward must be balanced against the private interest of protecting individuals from false and malicious claims. Id. Under the facts of *McHale*, which involved a good faith complaint, albeit one based on false information, the balance was struck in favor of the public's interest in encouraging complaints. We also stated, however, that a complaining witness who knowingly gives false information should not be protected by immunity from liability for malicious prosecution, because false information necessarily interferes with the intelligent exercise of official discretion. Id., 449.

The general teaching of both *Craig* and *McHale* is that whether and what form of immunity applies in any given case is a matter of policy that requires a balancing of interests. The specific teaching of *McHale* is that the torts of vexatious litigation and malicious prosecution; see footnote 3 of this opinion; reconcile that balancing process by providing different types of immunity depending on the circumstances. In *McHale*, we illustrated that balancing process by emphasizing two situations. The first was when the defendant "has undertaken no more than to provide potentially incriminating information to a public officer. In such a case, if the defendant has made a full and truthful disclosure and has left the decision to prosecute entirely in the hands of the public officer, he cannot be held liable for malicious prosecution." Id., 448. The second was when the "falsity of the information provided to a public official diminishes the private person's immunity." Id., 449.

In that circumstance, the defendant would not be immune from liability if he knew the information to be false. Thus, the fact that the tort of vexatious litigation itself employs a test that balances the need to encourage complaints against the need to protect the injured party's interests counsels strongly against a categorical or absolute immunity from a claim of vexatious litigation.

Furthermore, the stringent requirements of the tort point to the same conclusion. Vexatious litigation requires a plaintiff to establish that: (1) the previous lawsuit or action was initiated or procured by the defendant against the plaintiff; (2) the defendant acted with malice, primarily for a purpose other than that of bringing an offender to justice; (3) the defendant acted without probable cause; and (4) the proceeding terminated in the plaintiff's favor. *Zeller* v. *Consolini,* 235 Conn. 417, 424, 666 A.2d 64 (1995); *McHale* v. *W.B.S. Corp.,* supra, 178 Conn. 447; *Vandersluis* v. *Weil,* 176 Conn. 353, 356, 407 A.2d 982 (1978); *Calvo* v. *Bartolotta,* 112 Conn. 396, 397, 152 A. 311 (1930); *Schaefer* v. *O. K. Tool Co.,* 110 Conn. 528, 532, 148 A. 330 (1930). We have recognized that, for purposes of the tort of vexatious litigation, the previous litigation that terminated in the plaintiff's favor may be an administrative, rather than a judicial, proceeding. *DeLaurentis* v. *New Haven,* 220 Conn. 225, 248–49, 597 A.2d 807 (1991). These stringent requirements provide adequate room for both appropriate incentives to report wrongdoing and protection of the injured party's interest in being free from unwarranted litigation. Thus, because the tort of vexatious litigation strikes the proper balance, it is unnecessary to apply an additional layer of protection to would-be litigants in the form of absolute immunity.

We previously have recognized, in a different but related context, that, although the tort of defamation cannot surmount a claim of absolute immunity for statements made in a judicial proceeding, the tort of vexa-

tious litigation is treated differently because of these restraints built into it by virtue of its stringent requirements. In *Mozzochi* v. *Beck*, 204 Conn. 490, 491, 529 A.2d 171 (1987), we granted absolute immunity to attorneys who made allegedly defamatory comments in the course of a judicial proceeding. We noted that "[b]ecause litigants cannot have such access without being assured of the unrestricted and undivided loyalty of their own attorneys, we have afforded to attorneys, as officers of the court, absolute immunity from liability for allegedly defamatory communications in the course of judicial proceedings. . . . For other causes of action, however, the exigencies of the adversary system have not been deemed to require absolute immunity for attorneys. We have assumed, without discussion, that an attorney may be sued in an action for vexatious litigation, arguably because that cause of action has built-in restraints that minimize the risk of inappropriate litigation." (Citations omitted) Id., 494–95.

In addition, were we to provide absolute immunity for the communications underlying the tort of vexatious litigation, we would effectively eliminate the tort. Unlike the communications underlying the tort of defamation, virtually any initiation or procurement of a previous lawsuit would necessarily be part of any judicial proceeding. Thus, the tort of vexatious litigation would virtually always be subject to absolute immunity. Indeed, the Restatement (Second) of Torts implicitly recognizes this by providing that statements made in the course of a judicial or quasi-judicial proceeding are absolutely immune in the context of a defamation suit but not in the context of a suit for vexatious litigation. See 3 Restatement (Second), Torts § 587, p. 249, comment (a) (1977).

We therefore conclude that the requisite elements of the tort of vexatious litigation effectively strike the balance between the public interest of encouraging

complaining witnesses to come forward and protecting the private individual from false and malicious claims. It is unnecessary and undesirable to extend the additional protection afforded by the doctrine of absolute immunity to defendants in vexatious litigation claims.

The defendants rely on this court's decisions in *Craig* v. *Stafford Construction, Inc.*, supra, 271 Conn. 78, *Kelley* v. *Bonney*, supra, 221 Conn. 549, *Petyan* v. *Ellis*, supra, 200 Conn. 243, and *Hassett* v. *Carroll*, supra, 85 Conn. 23, the Appellate Court's decision in *Preston* v. *O'Rourke*, 74 Conn. App. 301, 811 A.2d 753 (2002), the Maryland Supreme Court's decision in *Miner* v. *Novotny*, 304 Md. 164, 498 A.2d 269 (1985), and the Nevada Supreme Court's decision in *Circus Circus Hotels* v. *Witherspoon*, 99 Nev. 56, 657 P.2d 101 (1983).[6] In all of these cases, the central question focused on whether immunity should attach in the forum in which the prior communication—whether malicious or not— was made. All of these cases, however, involved defamation claims that arose from these prior proceedings. See *Kelley* v. *Bonney*, supra, 565–66; *Petyan* v. *Ellis*, supra, 247; *Craig* v. *Stafford Construction, Inc.*, supra, 86; *Hassett* v. *Carroll*, supra, 35; *Preston* v. *O'Rourke*, supra, 303; *Miner* v. *Novotny*, supra, 176; *Circus Circus Hotels* v. *Witherspoon*, supra, 61. They did not involve claims of vexatious litigation.

The defendants further assert that both the federal government and this state have banned discrimination on the basis of sex and retaliatory actions taken by employers charged with such discrimination. See 42 U.S.C. § 2000e-2 (a) (prohibiting discrimination on basis of sex in employment); 42 U.S.C. § 2000e-3 (a) (prohib-

---

[6] The defendants also rely on *Field* v. *Kearns*, 43 Conn. App. 265, 682 A.2d 148, cert. denied, 239 Conn. 942, 684 A.2d 711 (1996). In *Field*, the court concluded that absolute immunity applied to a vexatious litigation claim. Id., 278. The holding of *Field* is inconsistent with the holding of this opinion.

iting retaliation by employers against any employee who has "made a charge, testified, assisted, or participated in" any investigation concerning allegation of discrimination in violation of Title VII of Civil Rights Act of 1964); General Statutes § 46a-60 (a) (1) and (8) (prohibiting discrimination on basis of sex, sexual harassment and creation of hostile work environment); General Statutes § 46a-60 (a) (4) (prohibiting discrimination against any employee who testifies or participates in complaint alleging discrimination on basis of sex). Given these prohibitions, the defendants contend that absolute immunity is necessary to bar claims of vexatious litigation in order to achieve both the federal and state legislative goal of eliminating sexual harassment in the workplace. We are not persuaded.

The elements of vexatious litigation provide sufficient protection for claimants against retaliation, and thus serve the social policy set forth by Title VII of the Civil Rights Act of 1964 and the General Statutes. As we stated previously, the tort of vexatious litigation sets forth stringent requirements that a plaintiff must meet in order successfully to prevail on a claim. The elements utilize a balancing test that effectively protects the interests of both complaining witnesses and individuals charged in complaints, and properly ensures that complaining witnesses who bring claims in good faith will be insulated from suit. *McHale* v. *W.B.S. Corp.*, supra, 187 Conn. 448. Accordingly, the tort of vexatious litigation effectuates the federal and state policy of providing workplaces that are free from sexual harassment.

Applying this same analytical framework to the second issue raised on appeal, we conclude that absolute immunity does bar the plaintiff's claim of intentional interference with contractual or beneficial relations. First, the underlying purpose of absolute immunity applies just as equally to this tort as it does to the tort of defamation. Second, this tort does not contain within

it the same balancing of relevant interests that are provided in the tort of vexatious litigation. Third, the elements of intentional interference with contractual or beneficial relations do not provide the same level of protection against the chilling of a witness' testimony as do the elements of vexatious litigation. A claim for intentional interference with contractual relations requires the plaintiff to establish: (1) the existence of a contractual or beneficial relationship; (2) the defendant's knowledge of that relationship; (3) the defendant's intent to interfere with the relationship; (4) that the interference was tortious; and (5) a loss suffered by the plaintiff that was caused by the defendant's tortious conduct. *Robert S. Weiss & Associates, Inc.* v. *Wiederlight*, 208 Conn. 525, 535–36, 546 A.2d 216 (1988); *Collum* v. *Chapin*, 40 Conn. App. 449, 452, 671 A.2d 1329 (1996). These elements simply do not have the same stringency as those that are the hallmark of the elements of a claim for vexatious litigation. For this reason, insofar as the balancing that applies, this tort is more like defamation than vexatious litigation. Therefore, the same balancing test applies to it as applies to defamatory statements: if made in the course of a judicial or quasi-judicial proceeding, they are absolutely immune.

The judgment with regard to the plaintiff's claim for vexatious litigation is reversed and the case is remanded for further proceedings according to law on that claim; the judgment with regard to the plaintiff's claim for intentional interference with contractual or beneficial relations is affirmed.

In this opinion the other justices concurred.