******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# MICHAEL ROBINSON ET AL. *v.* V. D.*
## (AC 46477)

Cradle, Suarez and Westbrook, Js.

*Syllabus*

The defendant appealed from the trial court's denial of his special motion to dismiss filed pursuant to the anti-SLAPP statute (§ 52-196a). He claimed that the court, inter alia, erred in determining that his alleged conduct, in connection with an application for a civil protection order and with respect to certain union grievance proceedings, did not relate to an exercise of a protected right in connection with a matter of public concern and, thus, fell outside the scope of § 52-196a. *Held*:

The trial court erred in failing to dismiss all counts of the plaintiffs' underlying complaint, with the exception of the statutory and common-law vexatious litigation counts, as they were barred by absolute immunity under the litigation privilege.

The trial court erred in concluding that the defendant failed to meet his initial burden of proving that the allegations in the complaint regarding his conduct during the course of the union grievance proceedings implicated the exercise of his constitutional right to petition the government in connection with a matter of public concern, the allegations of the complaint having sufficiently implicated potential and significant issues regarding the hiring practices within a governmental entity.

The plaintiffs could not demonstrate probable cause that they would have prevailed on their claims of statutory or common-law vexatious litigation to the extent that those counts were based on the union grievance proceedings and, therefore, the special motion to dismiss should have been granted as to those counts.

The trial court properly denied the special motion to dismiss with respect to the defendant's efforts to obtain a civil protection order, the defendant's conduct having arisen out of a wholly private dispute between the parties that did not have any appreciable connection to a matter of public concern, thus falling outside the ambit of § 52-196a and its intended protections.

* In accordance with federal law; see 18 U.S.C. § 2265 (d) (3) (2018), as amended by the Violence Against Women Act Reauthorization Act of 2022, Pub. L. No. 117-103, § 106, 136 Stat. 49, 851; we decline to identify any person protected or sought to be protected under a protection order, protective order, or a restraining order that was issued or applied for, or others through whom that person's identity may be ascertained.

Contrary to the plaintiffs' alternative ground for affirming the trial court's decision, § 52-196a did not, on its face or as applied, violate the plaintiffs' constitutional right to a jury trial under either the federal or state constitutions, as § 52-196a does not require trial courts to resolve disputed issues of fact or to dismiss claims that otherwise would have survived summary judgment or a motion for a directed verdict.

The plaintiffs failed to establish beyond a reasonable doubt that either prong of the separation of powers doctrine set forth in the state constitution was implicated by § 52-196a.

Argued March 4—officially released November 26, 2024

*Procedural History*

Action for, inter alia, defamation, and for other relief, brought to the Superior Court in the judicial district of New London, where the court, *Knox, J.*, denied the defendant's special motion to dismiss, and the defendant appealed to this court. *Reversed in part*; *further proceedings*.

*Jon L. Schoenhorn*, with whom, on the brief, was *Sebastian Ullman*, certified legal intern, for the appellant (defendant).

*Michael P. Carey*, for the appellees (plaintiffs).

*Daniel E. Livingston* and *Mary E. Kelly* filed a brief for the Connecticut AFL-CIO as amicus curiae.

*Opinion*

WESTBROOK, J. The defendant, V. D., appeals from the judgment of the trial court denying his special motion to dismiss the underlying civil action pursuant to General Statutes § 52-196a,[1] our state's anti-SLAPP

---

[1] General Statutes § 52-196a provides in relevant part: "(b) In any civil action in which a party files a complaint . . . against an opposing party that is based on the opposing party's exercise of its right of free speech, right to petition the government, or right of association under the Constitution of the United States or the Constitution of the state in connection with a matter of public concern, such opposing party may file a special motion to dismiss the complaint . . . .

* * *

"[e] (3) The court shall grant a special motion to dismiss if the moving party makes an initial showing, by a preponderance of the evidence, that the opposing party's complaint . . . is based on the moving party's exercise

statute.[2] The civil action filed by the plaintiffs, Michael Robinson and Mary Robinson, seeks compensatory damages and injunctive relief for defamation, invasion of privacy by false light, statutory and common-law vexatious litigation, and intentional and negligent infliction of emotional distress. The defendant claims that (1) the court improperly denied his special motion to dismiss the action on the ground that his alleged conduct did not relate to an exercise of a protected right in connection with a matter of public concern and, thus, fell outside the scope of § 52-196a,[3] and, (2) even if he is not entitled to a dismissal of the action pursuant to § 52-196a, the trial court lacks subject matter jurisdiction over this action because the defendant is entitled to absolute immunity under the litigation privilege for his alleged conduct, all of which occurred in the course of judicial or quasi-judicial proceedings. In addition to

of its right of free speech, right to petition the government, or right of association under the Constitution of the United States or the Constitution of the state in connection with a matter of public concern, unless the party that brought the complaint . . . sets forth with particularity the circumstances giving rise to the complaint . . . and demonstrates to the court that there is probable cause, considering all valid defenses, that the party will prevail on the merits of the complaint . . . .

\* \* \*

"(h) The provisions of this section shall not . . . (3) affect, limit or preclude the right of a party filing a special motion to dismiss to any defense, remedy, immunity or privilege otherwise authorized by law . . . ."

[2] "SLAPP is an acronym for strategic lawsuit against public participation, the distinctive elements of [which] are (1) a civil complaint (2) filed against a nongovernment individual (3) because of their communications to government bodies (4) that involves a substantive issue of some public concern. . . . The purpose of a SLAPP suit is to punish and intimidate citizens who petition state agencies and have the ultimate effect of chilling any such action." (Internal quotation marks omitted.) *Lafferty* v. *Jones*, 336 Conn. 332, 337 n.4, 246 A.3d 429 (2020), cert. denied,     U.S.    , 141 S. Ct. 2467, 209 L. Ed. 2d 529 (2021).

[3] The Connecticut AFL-CIO filed an amicus curiae brief in support of the defendant's contention that the court improperly denied his special motion to dismiss. It argues that protecting public employees against retaliatory lawsuits for exercising their right to engage in mandatory union grievance procedures is precisely the type of ill that § 52-196a was designed to prevent.

disputing the defendant's claims, the plaintiffs raise as an alternative ground for affirming the denial of the special motion to dismiss that § 52-196a violates both the state and federal constitutions.[4] We conclude that the question of whether the plaintiffs' action is barred by absolute immunity under the litigation privilege implicates the trial court's subject matter jurisdiction and, thus, must be considered prior to addressing the merits of the special motion to dismiss. We agree with the defendant that, with the exception of those counts sounding in vexatious litigation, the complaint is barred by absolute immunity. With respect to the remaining vexatious litigation counts, we affirm in part and reverse in part the court's decision to deny the special motion to dismiss, we reject the plaintiffs' alternative ground for affirmance, and we remand the matter for further proceedings in accordance with this opinion.

The following relevant facts and procedural history, which are undisputed for purposes of this appeal, were set forth by our Supreme Court in its earlier opinion in this matter.[5] See *Robinson* v. *V. D.*, 346 Conn. 1002,

[4] The plaintiffs argue that § 52-196a is unconstitutional for multiple reasons. First, both facially and as applied, it deprives them of their state and federal constitutional rights to a jury trial and to petition for grievances. See Conn. Const., art. I, §§ 6, 10, and 19; U.S. Const., amend. I. Second, they argue that the statute violates the separation of legislative and judicial powers as set forth in article second and article fifth, § 1, of the constitution of Connecticut.

[5] Our Supreme Court previously transferred this appeal to itself, pursuant to Practice Book § 65-1, in order to adjudicate the plaintiffs' pending motion to dismiss the appeal for lack of a final judgment. See *Robinson* v. *V. D.*, 346 Conn. 1002, 1003 n.3, 293 A.3d 345 (2023). Our Supreme Court denied the motion to dismiss, concluding that a trial court's denial of a § 52-196a special motion to dismiss that raises a colorable claim under our anti-SLAPP statute is an immediately appealable final judgment under the second prong of the test annunciated in *State* v. *Curcio*, 191 Conn. 27, 31, 463 A.2d 566 (1983). See *Robinson* v. *V. D.*, supra, 1004. After concluding on the basis of its review of the record that the defendant had presented a colorable claim, it transferred the appeal back to this court for further proceedings on the merits of the appeal. Id., 1011.

1004–1007, 293 A.3d 345 (2023). "The parties are civilian employees of the United States Coast Guard (Coast Guard). Michael Robinson works as a locksmith at the United States Coast Guard Academy in New London (academy) and previously served as an assistant coach for the academy's skeet shooting team. Mary Robinson works as a human resources specialist at the Coast Guard headquarters. The defendant is employed as a carpenter/mason at the academy and, in 2019, was temporarily promoted to the new position of construction control inspector.

"In late 2019 or early 2020, after applying for the full-time, permanent construction control inspector position, the defendant was informed that he had not been selected for the position. The defendant then resumed his job as a carpenter/mason. Thereafter, the defendant filed a formal, written grievance through his union representative [in which he] alleged that the plaintiffs were involved in a quid pro quo arrangement with the candidate selected for the position and the official who had selected the candidate. The defendant also alleged that he was denied the position, in part, because of his known affiliation with the union . . . . A hearing took place, at which, the plaintiffs contend, the defendant made certain statements consistent with the allegations in the written grievance. Administrative officials with the Coast Guard subsequently investigated both of the plaintiffs and cleared them of any wrongdoing.

"Thereafter, in June, 2020, the parties attended a competitive shooting event at a gun club in Burrillville, Rhode Island. After the event was over, Michael Robinson and the defendant had a verbal altercation in the parking lot, during which they exchanged certain insults. Thereafter, the defendant served an application for a [civil protection] order on Michael Robinson. A hearing took place in the Superior Court, which dismissed the application.

"In December, 2020, the plaintiffs filed the present action against the defendant, alleging in their complaint that the defendant made false accusations against them on numerous occasions, namely, in the union grievance, during the proceedings which resulted from it, in the application for the [civil protection] order, and during the hearing that took place in the Superior Court on the [civil protection] order application. . . .

"In January, 2021, the defendant filed a special motion to dismiss, pursuant to § 52-196a, arguing that the plaintiffs' allegations in this action arose from the exercise of his rights of free speech, to petition the government, and to associate as a member of a labor union under the Connecticut constitution and the first amendment to the United States constitution. The defendant also alleged, among other defenses, that the plaintiffs' action violated public policy and that his statements were immune from the defamation claims, as they arose during judicial or quasi-judicial proceedings.

"The plaintiffs opposed the motion, and, following a hearing, the trial court denied the special motion to dismiss. The court found that the defendant's conduct as alleged in the complaint was not protected under § 52-196a because it addressed private concerns, rather than a matter of public concern, as defined in subsection (a) (1) of the statute. The court further concluded that the defendant's conduct during the work-related grievance process was personal in nature because it related to his employer's denial of the defendant's promotion and did not address the general practices of the employer. As such, the court determined that the defendant's conduct during that process was not related to a matter of public concern under the government, zoning and other regulatory matters category of the definition [of a matter of public concern found in § 52-196a (a) (1) (C)]. . . . In addition, the trial court found that the defendant's actions did not relate to a matter

of public concern under the public official or public figure category [of § 52-196a (a) (1) (D)] because the defendant had failed to establish that the plaintiffs' positions gave them substantial control or responsibility over governmental affairs or that there was a significant public interest in either position that went beyond the general interest in all public sector employees. Accordingly, the court concluded that the defendant had failed to meet his burden of showing, by a preponderance of evidence, that the complaint was based on the exercise of his right of free speech, to petition the government, or of association." (Footnotes omitted; internal quotation marks omitted.) Id., 1004–1007.

The defendant appealed from the trial court's decision to this court, following which the plaintiffs filed a motion to dismiss the appeal for lack of a final judgment. The defendant then moved to stay proceedings until our Supreme Court issued a decision in *Pryor* v. *Brignole*, 346 Conn. 534, 292 A.3d 701 (2023), in which the parties also had raised the issue of whether an appeal from the denial of a § 52-196a special motion to dismiss is an appealable final judgment. Id., 536–37. This court granted the defendant's motion for a stay on September 29, 2021, and deferred ruling on the plaintiffs' motion to dismiss. In July, 2022, pursuant to Practice Book § 65-1, our Supreme Court transferred this appeal to itself and ordered the parties to file appellate briefs addressing only the threshold jurisdictional issue.

On May 2, 2023, our Supreme Court released its decision in *Smith* v. *Supple*, 346 Conn. 928, 293 A.3d 851 (2023), in which it held that the denial of a special motion to dismiss that raises a colorable claim to the anti-SLAPP protections of § 52-196a is an immediately appealable final judgment. Id., 964. That same day, the court also released its decisions in *Pryor* v. *Brignole*, supra, 346 Conn. 534, and in the present appeal.

With respect to the present matter, our Supreme Court concluded that the defendant "has asserted a colorable claim that at least some of the statements forming the basis of the plaintiffs' complaint were based on the defendant's exercise of his right to petition the government, as contemplated by the anti-SLAPP statute. Right to petition the government is defined in relevant part as communication in connection with an issue under consideration or review by a legislative, executive, administrative, judicial or other governmental body. . . . General Statutes § 52-196 (a) (3) (A). A party seeking protection under the statute must show, by a preponderance of the evidence, that the exercise of that right is in connection with a matter of public concern, as defined in § 52-196a (a) (1). . . . Courts have found that mixed questions of private and public concerns may be protected under the first amendment and that the fact that a statement evolves from a personal dispute does not preclude some aspect of it from touching [on] matters of public concern. . . .

"The defendant presented evidence before the trial court that his actions related to a matter of public concern because they (1) arose from a collective bargaining agreement between the Coast Guard and the American Federation of Government Employees, Council 120, to which the defendant belongs, and (2) related to improprieties in the hiring process at the academy that went beyond his own personal position, specifically, that Coast Guard hiring officials disfavor persons with a union affiliation when hiring." (Citation omitted; internal quotation marks omitted.) *Robinson* v. *V. D.*, supra, 346 Conn. 1008–1009.

Our Supreme Court concluded on the basis of its review of the record and the plain meaning of right to petition the government that "the defendant has at least

a superficially well founded claim that some of his statements, particularly those relating to the grievance process, qualify as communications relating to an issue under consideration by a governmental body, namely, the Coast Guard. . . . In addition, the defendant has asserted a colorable claim that his statements during the grievance process relate to a matter of public concern. Although these statements evolved from a personal dispute between the parties, the statements could conceivably be of concern to the general public because the allegations related to hiring practices within a governmental entity. In particular, the defendant's speech touches on the possible existence of anti-union sentiment within the academy and quid pro quo arrangements between management officials as it relates to hiring. Therefore, the defendant has at least a superficially well founded claim that his conduct concerns not only him, but others at the academy and the general community at large." (Citations omitted; internal quotation marks omitted.) Id., 1009–10.

Having determined that the appeal was taken from an appealable final judgment, our Supreme Court transferred the appeal back to this court pursuant to Practice Book § 65-1 "for further proceedings according to law."[6] Id., 1011. Additional facts will be set forth as necessary.

## I

The defendant claims that the underlying action is barred by absolute immunity under the litigation privilege because all the relevant conduct alleged in the underlying complaint occurred during the course of judicial or quasi-judicial proceedings. Although the defendant raised the issue of absolute immunity in his

---

[6] In accordance with the Supreme Court's decision and remand order, the Office of the Appellate Clerk issued a letter to the parties informing them that the appeal had been assigned a new docket number and setting a schedule for filing briefs on the merits of the appeal.

special motion to dismiss, the trial court declined to address it.[7] Ordinarily, "[o]nly in [the] most exceptional circumstances can and will [an appellate] court consider a claim, constitutional or otherwise, that has not been raised *and decided* in the trial court. . . . A claim that a court lacks subject matter jurisdiction, however, may be raised at any time during the proceedings, *including for the first time on appeal*." (Citations omitted; emphasis added; footnote omitted; internal quotation marks omitted.) *Mangiafico* v. *Farmington*, 331 Conn. 404, 429–30, 204 A.3d 1138 (2019). Because the defendant's absolute immunity claim implicates the trial

[7] The court reasoned that, despite the defendant having expressly stated in the opening paragraph of his special motion to dismiss that the motion was brought "[p]ursuant to Practice Book §§ 10-6 and 10-30, and [General Statutes] § 52-196a," he had failed expressly to request that the court treat his motion as "a hybrid motion, combining a special motion to dismiss with a standard motion to dismiss." The court further indicated that other Superior Court decisions had expressed a general disfavor for hybrid motions, albeit in other contexts, because our rules of practice do not expressly authorize them. The court concluded: "Given the expedited time requirements pertaining to a statutory special motion to dismiss, the limited inquiry of a special motion to dismiss, and the defendant's failure to cogently argue that his motion incorporated a Practice Book § 10-30 motion to dismiss, the court will not recognize this special motion to dismiss as a hybrid motion nor entertain it as one." Although a court certainly has "broad discretion to manage its docket and resolve cases as it sees fit"; *M. B.* v. *S. A.*, 194 Conn. App. 727, 735, 222 A.3d 551 (2019); which arguably would include the discretion to reject a so-called hybrid motion, it is axiomatic that questions pertaining to the subject matter jurisdiction of the court "may be raised at any time and by any party . . . and that [o]nce . . . raised, [the challenge] must be disposed of *no matter in what form it is presented*." (Citations omitted; emphasis added; internal quotation marks omitted.) *Oxford House at Yale* v. *Gilligan*, 125 Conn. App. 464, 473, 10 A.3d 52 (2010). Moreover, § 52-196a (h) expressly provides that a party's use of the statute "shall not . . . (3) affect, limit or preclude the right of a party filing a special motion to dismiss to *any defense, remedy, immunity or privilege otherwise authorized by law* . . . ." (Emphasis added.) Nevertheless, the defendant has not raised the trial court's failure to address his absolute immunity claim as a claim of error on appeal. Instead, he raises the issue as a matter for this court to decide in the first instance, and, thus, we do not reach whether the trial court abused its discretion by failing to consider the issue when raised.

court's subject matter jurisdiction, it presents a threshold issue that we must address before turning to the merits of the special motion to dismiss.[8] See *Bruno* v. *Travelers Cos.*, 172 Conn. App. 717, 719, 161 A.3d 630 (2017) ("litigation privilege provides an absolute immunity from suit and, thus, implicates the trial court's subject matter jurisdiction");[9] see also *American Tax Funding, LLC* v. *Design Land Developers of Newtown, Inc.*, 200 Conn. App. 837, 844, 240 A.3d 678 (2020) ("subject matter jurisdiction . . . is a threshold matter that must be resolved first").

We begin by setting forth the appropriate legal standard and relevant principles of law. "When a . . . court decides a jurisdictional question raised by a pretrial motion to dismiss, it . . . [ordinarily] must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the

---

[8] "A special motion to dismiss filed pursuant to § 52-196a . . . is not a traditional motion to dismiss based on a jurisdictional ground. It is, instead, a truncated evidentiary procedure enacted by our legislature in order to achieve a legitimate policy objective, namely, to provide for a prompt remedy. . . . It is, in this respect, similar to a motion for summary judgment." (Citation omitted.) *Elder* v. *Kauffman*, 204 Conn. App. 818, 824, 254 A.3d 1001 (2021). In other words, a special motion to dismiss pursuant to § 52-196a does not itself implicate a trial court's subject matter jurisdiction.

[9] Courts have deemed that certain claims of immunity, such as sovereign immunity, implicate a court's subject matter jurisdiction and, thus, properly are raised by way of a motion to dismiss. See *Carrubba* v. *Moskowitz*, 81 Conn. App. 382, 398, 840 A.2d 557 (2004), aff'd, 274 Conn. 533, 877 A.2d 773 (2005). Other immunities and privileges, however, such as qualified quasi-judicial immunity and governmental immunity, have been held not to implicate a court's subject matter jurisdiction and, thus, more appropriately are raised as a special defense and subsequently tested via a motion to strike or a motion for summary judgment. Id., 398–99. Our Supreme Court has stated that absolute immunity serves a similar purpose as "the sovereign immunity enjoyed by the state." *Chadha* v. *Charlotte Hungerford Hospital*, 272 Conn. 776, 787, 865 A.2d 1163 (2005). Accordingly, absolute immunity under the litigation privilege, like sovereign immunity, implicates subject matter jurisdiction.

pleader.[10] . . . When deciding whether the [litigation] privilege applies, every presumption in favor of the court's jurisdiction should be indulged." (Citations omitted; footnote added; internal quotations marks omitted.) *Deutsche Bank AG* v. *Vik*, 349 Conn. 120, 136–37, 314 A.3d 583 (2024).

Courts often have used the terms absolute immunity and litigation privilege interchangeably. See *Tyler* v. *Tatoian*, 164 Conn. App. 82, 83 n.1, 137 A.3d 801, cert. denied, 321 Conn. 908, 135 A.3d 710 (2016). "The litigation privilege is a long-standing [common-law] rule that communications uttered or published in the course of judicial proceedings are absolutely privileged so long as they are in some way pertinent to the subject of the controversy. . . . The privilege . . . applies to every step of the proceeding until [its] final disposition . . . including to statements made in pleadings or other documents prepared in connection with [the] proceeding. . . . The privilege originated in response to the need to bar persons accused of crimes from suing their accusers for defamation. . . . [It] then developed to encompass and bar defamation claims against all participants in judicial proceedings, including judges, attorneys, parties, and witnesses. . . . Subsequently, the privilege was expanded to bar a variety of retaliatory civil claims arising from communications or communicative acts

---

[10] As explained in more detail by our Supreme Court in *Conboy* v. *State*, 292 Conn. 642, 650, 974 A.2d 669 (2009), "[t]rial courts addressing motions to dismiss for lack of subject matter jurisdiction . . . may encounter different situations, depending on the status of the record in the case." The court in *Conboy* agreed with analogous federal jurisprudence that "[l]ack of subject matter jurisdiction may be found in any one of three instances: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." Id., 651. In the present case, neither party has asserted that the absolute immunity issue requires resolution of any disputed jurisdictional facts. Accordingly, we can resolve the question of subject matter jurisdiction on the basis of the allegations in the complaint and those facts that are undisputed as evidenced in the record.

occurring in the course of a judicial or quasi-judicial proceeding, including, but not limited to, claims for tortious interference, intentional infliction of emotional distress, fraud, and violations of [the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq.]. . . .

"The policy underlying the [litigation] privilege is that in certain situations the public interest in having people speak freely outweighs the risk that individuals will occasionally abuse the privilege by making false and malicious statements. . . . Participants in a judicial process must be able to testify or otherwise take part without being hampered by fear of defamation [or other retaliatory litigation]. . . . [In] determining whether a statement is made in the course of a judicial proceeding . . . the court must decide as a matter of law whether the [alleged statement is] sufficiently relevant to the issues involved in . . . [the] proceeding, so as to qualify for the privilege. . . . The test for relevancy is generous, and judicial proceeding has been defined liberally to encompass much more than civil litigation or criminal trials." (Citations omitted; internal quotation marks omitted.) *Deutsche Bank AG* v. *Vik*, supra, 349 Conn. 137–38.

In deciding whether a person is entitled to absolute immunity under the litigation privilege, "[courts] must first determine whether the proceedings [in question] were [judicial or quasi-judicial] in nature. The judicial proceeding to which [absolute] immunity attaches has not been defined very exactly. It includes any hearing before a tribunal which performs a judicial function, ex parte or otherwise, and whether the hearing is public or not. . . . It extends also to the proceedings of many administrative officers, such as boards and commissions, so far as they have powers of discretion *in applying the law to the facts* which are regarded as judicial or quasi-judicial, in character." (Emphasis

added; internal quotation marks omitted.) *Kruger* v. *Grauer*, 173 Conn. App. 539, 547–48, 164 A.3d 764, cert. denied, 327 Conn. 901, 169 A.3d 795 (2017).

In addition to the application of law to fact requirement, our Supreme Court has identified additional factors for courts to consider in determining whether a proceeding is quasi-judicial in nature. These factors include whether the body conducting the proceeding has the power to "(1) exercise judgment and discretion; (2) hear and determine or to ascertain facts and decide; (3) make binding orders and judgments; (4) affect the personal or property rights of private persons; (5) examine witnesses and hear the litigation of the issues on a hearing; and (6) enforce decisions or impose penalties. . . . These factors are not exclusive; nor must all factors militate in favor of a determination that a proceeding is quasi-judicial in nature for a court to conclude that the proceeding is, in fact, quasi-judicial. . . . [T]hese factors are [i]n addition to, not in lieu of, the application of the law to fact requirement." (Citations omitted; internal quotation marks omitted.) *Priore* v. *Haig*, 344 Conn. 636, 648, 280 A.3d 402 (2022). It is also important for courts "to consider whether there is a sound public policy reason for permitting the complete freedom of expression that a grant of absolute immunity provides." (Internal quotation marks omitted.) Id., 652.

Our Supreme Court recently summarized that a proceeding will only be considered quasi-judicial if "the proceeding at issue is specifically authorized by law, applies law to fact in an adjudicatory manner, contains adequate procedural safeguards, and is supported by a public policy encouraging absolute immunity for proceeding participants." *Khan* v. *Yale University*, 347 Conn. 1, 10, 295 A.3d 855 (2023). Accordingly, "whether a particular proceeding is quasi-judicial in nature, for the purposes of triggering absolute immunity, will

depend on the particular facts and circumstances of each case." *Priore* v. *Haig*, supra, 344 Conn. 645.

In the present case, the alleged conduct of the defendant occurred in connection with two separate and distinct proceedings: (1) the filing and pursuit of a union grievance and (2) the filing and pursuit of an application for a civil protection order. With respect to the grievance proceedings, the plaintiffs allege in the underlying complaint that the defendant made a number of false accusations against them, both in the written grievance complaint and in oral statements made during the grievance hearing. Specifically, the complaint provides that the defendant asserted that the plaintiffs had used their positions within the Coast Guard to influence the hiring process, including by engaging in an improper quid pro quo with Coast Guard officials and the person who eventually was hired for the permanent promotion sought by the defendant.[11] With respect to the civil protection order proceedings, which arose out of the parties' altercation at the gun show, the complaint alleges

---

[11] Paragraphs nine and ten of the complaint contain the following recitation of the defendant's alleged offensive conduct during the course of the grievance proceedings: the defendant "falsely alleged that [the plaintiffs], through their alleged conduct in the hiring process for the construction control inspector position, had violated merit system principles ('MSP') because there had been a 'quid pro quo' arrangement between the selecting official and the successful applicant ('JW') in which Mary Robinson, using her position as [a human resources] specialist, in some way participated. . . .

"[T]he defendant also falsely alleged that: a. Michael Robinson was part of the alleged conspiracy; b. JW is the best childhood friend of one of the Robinsons' sons; c. The hiring official was pressured into selecting JW acting against his better judgment; d. Mary Robinson had the means to and may have inappropriately influenced the referral lists used to select a candidate, and covered her tracks with various deceptions; e. Michael Robinson said that he would lie to protect Mary Robinson because she could get in a lot of trouble; f. Veterans' preference laws were violated; g. JW was unfairly advanced through the quid pro quo arrangement and his personal relationship with [human resources] officials, while [the defendant] was unfairly treated because of his known affiliation with the union; h. Management favors persons who do not affiliate with the union; i. Mary Robinson threatened to investigate anyone who organized or helped the union to organize; j. An insinuation that wrongdoing led to a change in Mary Robinson's scope

that the defendant made several false allegations and statements regarding the plaintiffs, both in his application for a civil protection order and during the subsequent hearing on the application before the Superior Court.[12] Having considered all relevant factors, we are

of work circa 2010 when it was determined that Michael Robinson's position as [National Association of Government Employees] union steward, which he had just obtained at that time, raised an appearance of potential conflicts of interest, and an assertion that both Robinsons were accused of unfair labor practices based on this situation; k. Mary Robinson had exerted inappropriate control over hiring at the academy for years; *l.* Mary Robinson received the 'report of hire' of JW although she should not have had access to it; m. Michael Robinson, acting on his own behalf and on behalf of Mary Robinson, relentlessly harassed and threatened [the defendant] about the grievance; n. Mary Robinson cut another employee 'out of the loop' on the JW hiring process; o. Mary Robinson 'helped' JW with his resume for the job posting but did not help anyone else; p. Michael Robinson encouraged [the defendant] not to post for the open position because Mary Robinson could get him a supervisory job; q. Michael Robinson made 'continual transits to and from [Mary Robinson's] office with reports about [the defendant]; and r. Michael Robinson threatened and harassed [the defendant] about filing the grievance."

[12] Paragraphs twenty-five through twenty-seven of the complaint contain the following recitation of the defendant's alleged conduct as it relates to the civil protection order: In the civil protection order application, the defendant "falsely claimed that he was unsafe at work because Michael Robinson had followed and threatened him at work . . . [and] that he was in imminent danger. . . . [The defendant] falsely accused Michael Robinson of having 'laid in wait [for him at the gun show] in attempt to threaten and harass [him]. . .'; of stalking him at work several times and threatening him about the [union grievance]; kicking at and attempting to take the trailer hitch from his vehicle; backing into his vehicle; continuing 'to come at' him as he was walking to his vehicle and that another club member had to physically restrain him; and threatened his job." At the contested hearing on the civil protection order application, the defendant testified that "a. He had told his supervisor at the academy that Michael Robinson had stalked and harassed him at work; b. Michael Robinson tried to remove his trailer hitch from and was kicking his vehicle after the [gun show]; c. Michael Robinson carries a concealed weapon, implying that he was carrying a weapon during the [gun show] incident . . . and that he would present a danger if he were carrying one . . . d. Michael Robinson kicked open the door of his own vehicle and 'came at' [the defendant]; e. (Implied that) his [fourteen] year old son was in danger on account of Michael Robinson's behavior after the [gun show], and that he and his family generally were unsafe when Michael Robinson was around; f. (Via a recording) said loudly

persuaded that both the union grievance proceedings and the proceeding on the civil protection order application qualify as either a judicial or quasi-judicial proceeding, and, accordingly, any pertinent statements made within the context of those proceedings should be afforded absolute immunity under the litigation privilege.

First, we conclude that the union grievance proceedings are quasi-judicial in nature for purposes of applying absolute immunity. In *Preston* v. *O'Rourke*, 74 Conn. App. 301, 314 n.6, 811 A.2d 753 (2002), this court recognized and resolved a split in authority over "whether communications made in the course of grievance or arbitration proceedings provided for by collective bargaining agreements should be accorded absolute . . . immunity." The court concluded that the "better result is the protection of absolute immunity." Id. That determination is consistent with our Supreme Court's subsequent decision in *Craig* v. *Stafford Construction, Inc.*, 271 Conn. 78, 80–81, 93, 856 A.2d 372 (2004), in which it held that an investigation conducted by the internal affairs division of the city of Hartford's police department constituted a quasi-judicial proceeding for the purpose of affording absolute immunity to the citizen whose claim of racial bias had given rise to the investigation. Although the court in *Craig* recognized "the debilitating affect that a false allegation of racial discrimination can have on a police officer"; id., 95; it nonetheless

enough to be heard by several people that Michael Robinson is 'crazy,' has 'mental health issues,' should go see his doctor, and should 'go get the help you need, bud'; g. Michael Robinson threatened him with force; h. Michael Robinson had damaged [the defendant's] vehicle, but then admitted there was no damage to either vehicle . . . i. The plaintiffs threatened his job, threatened his livelihood, and 'knowing that, you know, [Mary Robinson] is in [human resources], and that he has this information, and I'm done when I get back to the Coast Guard. I don't feel safe'; and j. (implied that) one or both of the plaintiffs committed perjury during the hearing, asking Mary Robinson whether she thought it was 'appropriate to not tell the truth in court?' "

concluded "that the policy of encouraging citizen complaints against those people who wield extraordinary power within the community outweighs the need to protect the reputation of the police officer against whom the complaint is made." Id., 96.

Here, as was the case in *Craig*, the Coast Guard officials who heard the union grievance may not have possessed all of the aforementioned enumerated powers that we look to in determining whether proceedings are quasi-judicial. See *Priore* v. *Haig*, supra, 344 Conn. 648. Such deficit is not dispositive, however, of whether the proceeding was quasi-judicial in nature. Rather, we look to the overall facts and circumstances in making our determination.

The defendant was a federal employee and a member of a collective bargaining unit, and he initiated a formal grievance process as set forth in the relevant collective bargaining agreement. The matter was then adjudicated by Coast Guard administrative officials, who ascertained and evaluated the relevant facts and exercised judgment and discretion in applying all relevant rules, regulations and procedures applicable to the union grievance process. See, e.g., 5 U.S.C. § 7121 (setting forth minimum requirements for grievance procedures in collective bargaining agreements governed by federal labor relations statutes). The officials' resolution of the grievance had the potential to impact not only the employment status and other rights of the defendant as the complainant but potentially those of the plaintiffs, other Coast Guard personnel engaged in the hiring process, and the recipient of the job sought by the defendant. Accordingly, we perceive nothing of import in the present case that warrants treating the union grievance proceedings differently than the proceedings at issue in *Craig* or *Preston*. Moreover, as a matter of sound policy, extending absolute immunity to the union grievance proceedings helps to alleviate any possible chilling

effect on employees who may have good faith criticisms regarding the hiring practices of powerful government agencies like the Coast Guard. In short, we are persuaded that the union grievance proceedings at issue were quasi-judicial in nature.

Very little additional discussion is warranted as to whether the proceeding pertaining to the application for a civil protection order was a judicial proceeding for purposes of absolute immunity. The filing of the application initiated an action in the Superior Court that resulted in a hearing at which a judge heard testimony, ascertained the relevant facts, and exercised judgment and discretion in applying the relevant law. The decision on the application potentially affected the personal rights of the parties. Applications for civil protection orders will often involve the disclosure of highly personal and potentially unfavorable information that is highly pertinent to the order being sought. Sound public policy favors granting absolute immunity in this context so that parties seeking the court's protection will not be chilled from bringing these matters to the attention of the court for fear of subsequent civil litigation.

Having reviewed the allegations set forth in the complaint; see footnotes 11 and 12 of this opinion; we conclude that the written statements and/or factual assertions that the defendant allegedly made regarding the plaintiffs in his grievance application and in the application seeking a civil protection order, as well as any oral statements or testimony made during the hearings before the Superior Court or the Coast Guard administrative officials, qualify as statements made during the course of a judicial or quasi-judicial proceeding. Specifically, the subject matter of the alleged statements and assertions—irrespective of their veracity or any ill intent on the part of the defendant—all directly related either to the defendant's purported rationale for bringing his union grievance or for seeking a civil protection

order. In other words, all statements were pertinent to the subject matter of the grievance or protection order proceedings such that they qualify for absolute immunity under the litigation privilege.

As previously noted, absolute immunity pursuant to the litigation privilege bars not only actions for defamation but a variety of legal theories or causes of actions that similarly may be construed as retaliatory on the basis of written and oral statements made during the course of a judicial or quasi-judicial proceeding. See *Deutsche Bank AG* v. *Vik*, supra, 349 Conn. 137–38. Thus, absolute immunity bars not only the plaintiffs' defamation count but also those counts of the plaintiffs' complaint sounding in invasion of privacy by false light and intentional and negligent infliction of emotional distress. See *Dorfman* v. *Smith*, 342 Conn. 582, 612–13, 271 A.3d 53 (2022) (litigation privilege bars negligent infliction of emotional distress claim); *Simms* v. *Seaman*, 308 Conn. 523, 569, 69 A.3d 880 (2013) (claim of intentional infliction of emotional distress is subject to litigation privilege); *Tucker* v. *Bitonti*, 34 Conn. Supp. 643, 647, 382 A.2d 841 (App. Sess. 1977) (absolute immunity bars claim of invasion of privacy if challenged conduct occurred in course of judicial proceedings).

We nevertheless agree with the plaintiffs that, in accordance with our Supreme Court's holding in *Rioux* v. *Barry*, 283 Conn. 338, 927 A.2d 304 (2007), absolute immunity cannot be invoked to bar those counts seeking to recover on theories of statutory and common-law vexatious litigation. Id., 343. The court in *Rioux* explained that absolute immunity does not attach to statements that provide the grounds for the tort of vexatious litigation, reasoning as follows: "[T]he fact that the tort of vexatious litigation itself employs a test that balances the need to encourage complaints against the need to protect the injured party's interests counsels strongly against a categorical or absolute immunity

from a claim of vexatious litigation." Id., 347. The court noted that the stringent requirements that a plaintiff must establish, including that the prior proceeding was initiated by the defendant against the plaintiff and had terminated in the plaintiff's favor, "provide adequate room for both appropriate incentives to report wrongdoing and protection of the injured party's interest in being free from unwarranted litigation. Thus, because the tort of vexatious litigation strikes the proper balance, it is unnecessary to apply an additional layer of protection to would-be litigants in the form of absolute immunity." Id.

For the reasons provided, we conclude that, with the exception of the statutory and common-law vexatious litigation counts, all counts of the plaintiffs' underlying complaint are barred by absolute immunity under the litigation privilege and, therefore, must be dismissed. Because, however, the vexatious litigation counts are not subject to dismissal on that same ground, we still must consider whether the court improperly failed to dismiss those counts pursuant to the defendant's special motion to dismiss.

## II

In addition to invoking absolute immunity, the defendant claims that the trial court improperly denied his special motion to dismiss filed pursuant to § 52-196a on the ground that the conduct alleged in the complaint failed to relate to a matter of public concern and, thus, fell outside of the protections afforded by § 52-196a. For the reasons that follow, we agree that the trial court should have granted the special motion to dismiss in part because, with respect to the alleged statements made in connection with the grievance proceeding, the defendant's conduct related to the exercise of a protected right in connection with a matter of public concern, and the plaintiffs cannot, as a matter of law, establish probable cause that they can prevail on their

vexatious litigation counts with respect to the grievance proceeding.

"A special motion to dismiss filed pursuant to § 52-196a . . . is not a traditional motion to dismiss based on a jurisdictional ground. It is, instead, a truncated evidentiary procedure enacted by our legislature in order to achieve a legitimate policy objective, namely, to provide for a prompt remedy." *Elder* v. *Kauffman*, 204 Conn. App. 818, 824, 254 A.3d 1001 (2021). Section 52-196a (e) (3), as previously noted, provides as follows: "The court shall grant a special motion to dismiss if the moving party makes an initial showing, by a preponderance of the evidence, that the opposing party's complaint . . . is based on the moving party's exercise of its right of free speech, right to petition the government, or right of association[13] under the Constitution of the United States or the Constitution of the state in connection with a matter of public concern, *unless* the party that brought the complaint . . . sets forth with particularity the circumstances giving rise to the complaint . . . and demonstrates to the court that there is probable cause, considering all valid defenses, that the party will prevail on the merits of the complaint . . . ." (Emphasis added; footnote added.) Accordingly, by its plain language, the statute requires courts to engage in

---

[13] General Statutes § 52-196a (a) provides in relevant part the following definitions: "(2) 'Right of free speech' means communicating, or conduct furthering communication, in a public forum on a matter of public concern; (3) 'Right to petition the government' means (A) communication in connection with an issue under consideration or review by a legislative, executive, administrative, judicial or other governmental body, (B) communication that is reasonably likely to encourage consideration or review of a matter of public concern by a legislative, executive, administrative, judicial or other governmental body, or (C) communication that is reasonably likely to enlist public participation in an effort to effect consideration of an issue by a legislative, executive, administrative, judicial or other governmental body; (4) 'Right of association' means communication among individuals who join together to collectively express, promote, pursue or defend common interests . . . ."

a two step process when resolving an anti-SLAPP motion to dismiss. First, the court must determine if the defendant has demonstrated that the complaint is based on the defendant's exercise of one of the enumerated rights and in connection with a matter of public concern. Our review of whether a defendant satisfies this initial burden by alleging conduct that falls within the ambit of the anti-SLAPP statute involves a question of statutory construction over which our review is plenary. See *Chapnick* v. *DiLauro*, 212 Conn. App. 263, 269, 275 A.3d 746 (2022). Second, if the court determines that a defendant has met this initial burden, it must turn to whether the plaintiffs can demonstrate probable cause that they will prevail on the merits of the complaint, taking into consideration all valid defenses.

Section 52-196a (a) (1) defines a "[m]atter of public concern" as "an issue related to (A) health or safety, (B) environmental, economic or community well-being, (C) the government, zoning and other regulatory matters, (D) a public official or public figure, or (E) an audiovisual work."[14] Although appellate courts in this state have not had an opportunity to meaningfully analyze the statutory definition regarding what constitutes a matter of public concern, both state and federal courts have addressed what constitutes a matter of public concern in the context of considering whether speech or conduct is protected under the first amendment. As

[14] With regard to whether the defendant's alleged conduct during the union grievance proceedings involved a matter of public concern, the trial court properly considered whether the matter satisfied the "government, zoning, and other regulatory matters" category; see General Statutes § 52-196a (a) (1) (C); or the "public official or public figure" category. See General Statutes § 52-196a (a) (1) (D). With regard to the alleged conduct during the protection order proceedings, the court first noted that the defendant had not clearly articulated a basis for dismissal but nonetheless considered whether that conduct potentially involved a matter of public concern under the "health or safety" category. See General Statutes § 52-196a (a) (1) (A).

the United States Court of Appeals for the Second Circuit recently stated: "[S]peech on matters of public concern is at the heart of [f]irst [a]mendment protection. . . . Whether speech addresses a matter of public concern is to be determined by the content, form, and context of [the relevant] statement, as revealed by the whole record. . . . Speech that relates to any matter of political, social, or other concern to the community . . . which may include conduct implicat[ing] public safety and welfare . . . for example, generally falls within the heart of the [f]irst [a]mendment's protection." (Citations omitted; emphasis omitted; internal quotation marks omitted.) *Rupp* v. *Buffalo*, 91 F.4th 623, 635 (2d Cir. 2024).

Moreover, courts in California and Nevada, which have similar anti-SLAPP statutes, have utilized the following principles for distinguishing between a public and private interest: "First, public interest does not equate with mere curiosity. . . . Second, a matter of public interest should be something of concern to a substantial number of people. . . . Thus, a matter of concern to the speaker and a relatively small, specific audience is not a matter of public interest. . . . Third, there should be some degree of closeness between the challenged statements and the asserted public interest . . . the assertion of a broad and amorphous public interest is not sufficient . . . . Fourth, the focus of the speaker's conduct should be the public interest rather than a mere effort to gather ammunition for another round of [private] controversy. . . . Finally, those charged with defamation cannot, by their own conduct, create their own defense by making the claimant a public figure. . . . A person cannot turn otherwise private information into a matter of public interest simply by communicating it to a large number of people." (Citations omitted; internal quotation marks omitted.) *Weinberg* v. *Feisel*, 110 Cal. App. 4d 1122, 1132, 2 Cal. Rptr.

3d 385 (2003); see also *Smith* v. *Zilverberg*, 137 Nev. 65, 68, 481 P.3d 1222 (2021); 61A Am. Jur. 2d 448, Pleading § 380 (2021). We agree that these factors are useful in evaluating whether a defendant's actions implicate a matter of public concern for purposes of our anti-SLAPP statute.

Turning first to the alleged conduct related to the defendant's efforts to obtain a civil protection order, we agree with the trial court's analysis that this conduct arises out of a wholly private dispute between the parties that does not have any appreciable connection to a matter of public concern. Accordingly, such conduct falls outside the ambit of § 52-196a and its intended protections. As the trial court aptly explained in its memorandum of decision, a number of Superior Court decisions have held that a party's statements pertaining to criminal activities potentially may implicate a matter of public concern under the "health or safety" prong of the statutory definition. See General Statutes § 52-296a (a) (1) (A). In those cases, however, the criminal activity in question had a connection not just to the health and safety of the parties involved but potentially to the health and/or safety of the public or community at large. This context is missing in the present case. Although the defendant's application for a civil protective order concerned some activity that, if charged and proven, potentially was criminal in nature, we are not convinced that the health and safety of the public itself is implicated so as to raise a matter of public concern under § 52-196a. Rather, the allegations and statements made by the defendant involved conduct that was wholly personal in nature, arising out of a verbal argument between the parties. The defendant has failed to convince us on appeal that the court improperly determined that the conduct alleged in the complaint regarding the civil protection order did not involve a health or safety issue connected to a matter of public

concern and thus was not entitled to the protections of § 52-196a. Accordingly, the court properly denied in part the special motion to dismiss.

Contrastingly, we conclude that the court erroneously concluded that the defendant failed to meet his initial burden of proving that the allegations in the complaint regarding his conduct during the course of the union grievance proceedings implicated the exercise of his constitutional right to petition the government in connection with a matter of public concern. As set forth subsequently in this opinion, we agree with the defendant that the court's reasoning for denying the special motion to dismiss, at least with respect to this aspect of the complaint, cannot be sustained. In addition, pursuant to the second part of the § 52-196a analysis, we conclude as a matter of law that the plaintiffs cannot demonstrate probable cause that they would prevail on their vexatious litigation counts with respect to the grievance proceedings because the grievance action was not an action brought against the plaintiffs. Accordingly, the court should have granted in part the special motion to dismiss.

There is no dispute that the Coast Guard, as a federal agency, is a governmental body. Accordingly, the statements forming the basis of the plaintiffs' complaint with respect to the grievance proceedings unquestionably were communications made in the context of the defendant exercising his right to petition the government, as contemplated by the anti-SLAPP statute, as they were made "in connection with an issue under consideration or review by a legislative, executive, administrative, judicial or *other governmental body* . . . ." (Emphasis added.) General Statutes § 52-196a (a) (3) (A). The record before the court also established that his alleged statements pertaining to the grievance related to a matter of public concern because they involve a dispute

that was governed by a valid collective bargaining agreement between the Coast Guard and the defendant's union and raised potential improprieties in the hiring process at the academy that necessarily implicated more than just the defendant's own employment and personal grievances. In particular, the defendant's speech touched on the possible existence of anti-union sentiment within the academy and quid pro quo arrangements between management officials and others related to hiring. Although the defendant's statements also concerned the personal dispute between the parties, the allegations sufficiently implicate potential and significant issues regarding the hiring practices within a governmental entity, which are issues that would be of concern to the general public. Accordingly, we disagree with the court's reasoning that the defendant's special motion to dismiss failed due to his failure to establish that his alleged conduct with respect to the grievance proceedings did not relate to an exercise of a protected right in connection with a matter of public concern.

This does not end the query, however. Even if the court failed to properly recognize that the defendant, at least in part, met his initial burden under § 52-196a, the plaintiffs may yet prevail in defeating the special motion to dismiss if they can demonstrate probable cause that they can prevail on the merits of their vexatious litigation counts regarding the grievance proceedings. A determination of whether allegations of a complaint, assuming they are true, demonstrate the existence of probable cause raises a question of law. Therefore, it is unnecessary to remand the matter to the trial court. Instead, on the basis of our plenary review of the record, we conclude that the plaintiffs cannot demonstrate probable cause that they will prevail on their claim of statutory or common-law vexatious litigation to the extent those counts are based on the grievance proceedings.

A vexatious litigation action brought either pursuant to the common law or pursuant to General Statutes § 52-568 requires the prior commencement of a civil action and termination of that civil action in the plaintiffs' favor. The Supreme Court has held that proceedings initiated "before an administrative board that has power to take action adversely affecting the legally protected interests of [another]" can satisfy the prior action requirement. (Internal quotation marks omitted.) *DeLaurentis* v. *New Haven*, 220 Conn. 225, 248, 597 A.2d 807 (1991). The plaintiffs, however, cannot rely on the defendant's initiation of the grievance proceedings as satisfying the prior action requirement for the purposes of their statutory and common-law vexatious litigation counts because the union grievance was not an action brought against the plaintiffs, such as in a civil or administrative action. Rather, a union grievance is directed at the employer, claiming a breach of the collective bargaining agreement. Because the plaintiffs cannot, as a matter of law, demonstrate probable cause that they would prevail on their vexatious litigation counts with respect to the allegation pertaining to the grievance proceedings, the special motion to dismiss should be granted in part.

## III

Finally, because we conclude that a portion of the plaintiffs' vexatious litigation counts are subject to dismissal pursuant to § 52-196a, we also must consider the plaintiffs' alternative ground for affirming the court's denial of the special motion to dismiss; namely, that § 52-196a is unconstitutional, both facially and as applied. The plaintiffs first argue that the statute requires the court to make factual findings that ought to be left to a jury, and, thus, the statute is unconstitutional because it deprives them of their state and federal constitutional rights to a jury trial and to petition for grievances. See Conn. Const., art. I, §§ 6, 10, and 19; U.S.

Const., amend. I. Second, they argue that the statute violates the separation of legislative and judicial powers as set forth in article second and article fifth, § 1, of the constitution of Connecticut. We conclude that both arguments lack merit.

"The constitutionality of a statute presents a question of law . . . over which our review is plenary. . . . While the courts may declare a statute to be unconstitutional, our power to do this should be exercised with caution, and in no doubtful case." (Citations omitted; internal quotation marks omitted.) *State* v. *Bonilla*, 131 Conn. App. 388, 392, 28 A.3d 1005 (2011). Our Supreme Court has stated that, "[i]n our assessment of whether [a] statute passes constitutional muster, we proceed from the well recognized jurisprudential principle that [t]he party attacking a validly enacted statute . . . bears the heavy burden of proving its unconstitutionality beyond a reasonable doubt and we indulge in every presumption in favor of the statute's constitutionality." (Internal quotation marks omitted.) *State* v. *Jason B.*, 248 Conn. 543, 556, 729 A.2d 760, cert. denied, 528 U.S. 967, 120 S. Ct. 406, 145 L. Ed. 2d 316 (1999). "Where a statute is challenged as being unconstitutional on its face, the burden is especially heavy." *State* v. *Ryan*, 48 Conn. App. 148, 154, 709 A.2d 21, cert. denied 244 Conn. 930, 711 A.2d 729, cert. denied, 525 U.S. 876, 119 S. Ct. 179, 142 L. Ed. 2d 146 (1998). With these principles in mind, we address the plaintiffs' arguments in turn.

A

The plaintiffs first argue that § 52-196a is unconstitutional, both facially and as applied, because it requires the court to make factual findings and, thus, deprives them of their federal and state constitutional rights to a jury trial and to petition for grievances. We conclude that the plaintiffs have failed to meet their burden of

demonstrating the unconstitutionality of the statute beyond a reasonable doubt.[15]

Article first, § 19, of the constitution of Connecticut, as amended by article four of the amendments, provides that "[t]he right of trial by jury shall remain inviolate." "This particular provision of our constitution has been consistently construed by Connecticut courts to mean that if there was a right to a trial by jury at the time of the adoption of the provision, then that right remains intact. . . . It is generally held that the right to a jury trial exists not only in cases in which it existed at common law and at the time of the adoption of [the] constitutional provisions preserving it, but also exists in cases substantially [similar] thereto." (Internal quotation marks omitted.) *Evans* v. *General Motors Corp.*, 277 Conn. 496, 509, 893 A.2d 371 (2006). "Litigants in a civil case have a constitutional right to have a question of fact decided by a jury. . . . Nevertheless, such a right may be subjected to reasonable conditions and regulations." (Citation omitted; internal quotation marks omitted.) *Beizer* v. *Goepfert*, 28 Conn. App. 693, 703, 613 A.2d 1336, cert. denied, 224 Conn. 901, 615 A.2d 1044 (1992), cert. denied, 507 U.S. 973, 113 S. Ct. 1416, 122 L. Ed. 2d 786 (1993); see also, e.g., General Statutes § 52-215 (excluding certain types of cases from

---

[15] No appellate court in this state has engaged in a detailed analysis regarding the constitutionality of § 52-196a. But see *Elder* v. *21st Century Media Newspaper*, *LLC*, 204 Conn. App. 414, 428, 254 A.3d 344 (2021) (rejecting claim that summary adjudications violate right to trial by jury), and *Elder* v. *Kauffman*, supra, 204 Conn. App. 833 (2021) (adopting reasoning in *Elder* v. *21st Century Media Newspaper*, *LLC*, supra, 204 Conn. App. 414, to summarily reject claim that § 52-196a was unconstitutional as applied because its application infringed on constitutional rights to redress and to trial by jury). At least one Superior Court, however, has upheld the statute against similar constitutional challenges as those raised in the present appeal. See *Gifford* v. *Taunton Press*, *Inc.*, Superior Court, judicial district of Danbury, Docket No. CV-18-6028897-S (July 11, 2019). Although the court's analysis is not binding on this court, it is well reasoned and persuasive and, to the extent applicable, we adopt the reasoning in this opinion.

right to jury trial and requiring parties to claim right to jury within specified time period); *Associated Investment Co. Ltd. Partnership* v. *Williams Associates IV*, 230 Conn. 148, 155, 645 A.2d 505 (1994) (excluding actions under CUTPA from right to jury trial).

Section 52-196a does not offend the right to a trial by jury because it does not require trial courts to resolve disputed issues of fact or to dismiss claims that otherwise would survive summary judgment or a motion for directed verdict. The plaintiff has not directed us to any particular language in the anti-SLAPP statute that requires a court to resolve disputed issues of fact. Rather, the court is tasked first with considering, on the basis of the facts as alleged in the complaint, whether the defendant can show by a preponderance of the evidence that the opposing party's action is based on the defendant's exercise of a protected right. Only if the defendant meets this burden, does the burden then shift to the plaintiff, who must demonstrate only that probable cause exists that the plaintiff will prevail on the merits of the cause of action asserted. Probable cause does not require fact-finding by the court. Rather, "[t]he legal idea of probable cause is a bona fide belief in the existence of the facts essential under the law for the action and such as would warrant a man of ordinary caution, prudence and judgment, under the circumstances, in entertaining it." (Internal quotation marks omitted.) *TES Franchising, LLC* v. *Feldman*, 286 Conn. 132, 137, 943 A.2d 406 (2008).

Thus, as explained by the Superior Court, a court considering a special motion to dismiss "does not need to make factual findings, but merely needs to determine, given all of the evidence provided by the parties, if there is any likelihood a reasonable juror could find in favor of the plaintiff. . . . If the answer is no, the court must dismiss the case and would, thus, only be dismissing a case that would be subject to dismissal on a motion

for directed verdict or to set aside the jury verdict in favor of the plaintiff.'' (Citation omitted.) *Gifford* v. *Taunton Press, Inc.*, Superior Court, judicial district of Danbury, Docket No. CV-18-6028897-S (July 11, 2019). Accordingly, we conclude that the anti-SLAPP statute does not, on its face or as applied, violate the plaintiffs' constitutional right to a jury trial under either the federal or state constitutions.

B

The plaintiffs also argue that § 52-196a violates the separation of legislative and judicial powers as set forth in article second and article fifth, § 1, of the constitution of Connecticut. According to the plaintiffs, § 52-196a is constitutionally invalid because "it is essentially a Practice Book rule, and usurps the power . . . [of] the Judicial Branch to adopt rules of practice and govern court procedure and to govern the conduct of litigation in the state courts." This argument lacks merit and requires little discussion.

Article second of the constitution of Connecticut, as amended by article eighteen of the amendments, provides in relevant part: "The powers of government shall be divided into three distinct departments, and each of them confided to a separate magistracy, to wit, those which are legislative, to one; those which are executive, to another; and those which are judicial, to another. . . ." Conn. Const., amend XVIII.

"[T]he primary purpose of [the separation of powers] doctrine is to prevent commingling of different powers of government in the same hands. . . . The constitution achieves this purpose by prescribing limitations and duties for each branch that are essential to each branch's independence and performance of assigned powers. . . . Nevertheless, [t]he rule of separation of governmental powers cannot always be rigidly applied. . . . Our state government is not divided in any such

way that all acts of the nature of the functions of one department can never be exercised by another department; such a division is impracticable, and if carried out would result in the paralysis of government. . . .

"In challenges to a statute's constitutionality on the ground that it impermissibly infringes on the judicial authority in violation of separation of powers principles, [a] statute will be held unconstitutional on [separation of powers] grounds [only] if: (1) it governs subject matter that not only falls within the judicial power, but also lies exclusively within judicial control; or (2) it significantly interferes with the orderly functioning of the Superior Court's judicial role." (Citations omitted; internal quotation marks omitted.) *State* v. *McCleese*, 333 Conn. 378, 415, 215 A.3d 1154 (2019).

Contrary to the assertions of the plaintiffs, they have failed to establish beyond a reasonable doubt that either prong of the aforementioned test is implicated by § 52-196a. Although the plaintiffs would have us view § 52-196a as usurping the role of the Superior Court to set rules of practice governing court procedures and the manner in which litigation is conducted by state courts, this argument is a bridge too far. Rather than merely mandating court procedures, the anti-SLAPP statute creates a substantive statutory right to be free from litigation, the purpose of which is to punish or intimidate citizens who exercise their rights to free speech and/or to petition the government. The creation of such rights is certainly within the powers and province of the legislative branch. "[W]here public policy, as perceived by the legislature, requires a simple and prompt proceeding in order to implement parties' rights, the legislature is not prohibited by the constitution from creating a statutory proceeding which provides for that simplicity and promptness, and which, in order to insure simplicity and promptness, enacts as part and parcel of the statutory proceeding certain minimal procedural

incidents. In such a case, the legislature is acting within its historic and traditional function of defining rights and prescribing remedies." *Fishman* v. *Middlesex Mutual Assurance Co.*, 4 Conn. App. 339, 356, 494 A.2d 606, cert. denied, 197 Conn. 806, 499 A.2d 57, and cert. denied, 197 Conn. 807, 499 A.2d 57 (1985). Section 52-196a clearly falls within this category of statute and, despite including procedural directives, does not offend principles of separation of power.

The plaintiffs have not claimed that § 52-196a conflicts with any existing rules of practice or procedure promulgated by the Superior Court. Moreover, although the promulgation and adoption of rules of practice clearly fall within the power of the Judicial Branch; see General Statutes § 51-14; it is not a power that lies *exclusively* within judicial control. At times, the legislature may promulgate statutes that contain procedures to be employed by the courts of this state. We simply are unconvinced that § 52-196a significantly interferes with the orderly functioning of the Superior Court's judicial role. As we have indicated, the statute is really no more than a form of summary judgment. See *Elder* v. *Kauffman*, supra, 204 Conn. App. 824. In short, we reject the plaintiffs' alternative ground for affirming the court's decision to deny the special motion to dismiss, as that ruling pertains to the vexatious litigation counts to the extent those counts are premised on the defendant's statements and/or actions in pursuing a civil protection order.

To summarize, we conclude that all counts of the complaint, with the exception of the counts sounding in common-law and statutory vexatious litigation, are barred by absolute immunity under the litigation privilege. With respect to the vexatious litigation counts, we affirm in part and reverse in part the court's decision to deny the special motion to dismiss as to those counts, concluding that the court should have granted the

motion to the extent that those counts rely on state-ments made in connection with the union grievance proceedings, but properly denied the motion with respect to any and all statements made in connection with the proceedings to obtain a civil protection order.

The judgment is reversed in part as to the denial of the motion to dismiss and the case is remanded with direction to dismiss all counts of the plaintiffs' complaint except those portions of the statutory and common-law vexatious litigation counts related to the protection order proceedings; the judgment is affirmed in all other respects.

In this opinion the other judges concurred.